**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Harish THUMMALA and Meghana REDDY ELATI,<br><br>     Plaintiffs,<br><br>v.<br><br>Ur M. JADDOU, Director, United States Citizenship and Immigration Services,<br><br>     Defendant.<br><br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)   C.A. No.<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

## INTRODUCTION

1.   This is a federal agency delay case filed by a family who seeks removal of conditions on their permanent resident status following the investment of at least $500,000 USD and the creation of at least 10 jobs for American workers. Inexplicably, Defendant is delaying adjudication of their petition notwithstanding a clear requirement to timely act.

2.   As succinctly stated by the Defendant in this regard: *"Let me be very clear. Our processing times are too long. There are no ifs, ands or buts about it[.]"  – Ur M. Jaddou, February 2022."[1]*

3.   Indeed, visa petitions and immigration benefits should be adjudicated in a regular, predictable fashion with reasonable processing times. Immigrants should not need to turn to federal court to be able to secure adjudications within a reasonable period of time. Neither of these are controversial positions.

---

[1] Suzanne Monyak, *USCIS Director: Federal Immigration Funds 'Critical' to Agency*, CQ Roll Call (Feb. 2, 2022), *available at* https://rollcall.com/2022/02/02/uscis-director-federal-immigration-funds-critical-to-agency/ (*last accessed* Dec. 31, 2024).

4.      Congress mandated the Defendant to adjudicate a Form I-829, Petition by Investor to Remove Conditions on Permanent Resident Status within 90 days of filing or an interview, whichever is later. 8 U.S.C. § 1186b(c)(3). Despite that clear mandate, in November 2020, United States Citizenship and Immigration Services (also referred to as "the Agency" or "USCIS") reported that it took between 36.5 and 234 months to decide a Form I-829. The Agency officially reported that it took between three and 19 years to decide an immigration benefits petition that it also concedes that it must decide within 90 days[2] and, on average, takes only 8.15 hours to adjudicate.[3] This reporting was not a typographical error. Just months later in March and April 2021, USCIS was representing that Forms I-829 were taking between 37 and 248 months.

5.      Put another way, the Agency was founded in 2003, yet in 2021, it was informing stakeholders that their cases were not outside of processing times lest they had been filed 20 years prior, three years *before* the Agency came into existence. By asserting that such a vast range of time is within "normal processing times," Defendant seeks to evade responsibility and accountability for nonsensical and entirely avoidable delays. Plaintiffs need the Court to check this abuse of executive power. For the reasons below, this Court should compel action on Plaintiffs' petition that has been pending for far longer than the deadlines imposed upon the Agency.

---

[2] "DHS acknowledges that processing times for many forms, including Form I–829, have exceeded the goals established by USCIS. Furthermore, DHS acknowledges its obligation to adjudicate Form I–829 filings within 90 days of the filing date or interview, whichever is later." Final Rule, U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements, 85 Fed. Reg. 46788, 46854 (Aug. 3, 2020).

[3] Proposed Rule, U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements, 84 Fed. Reg. 62280, 62292 (Nov. 14, 2019).

## THE PARTIES

6.      Plaintiff Harish Thummala is a citizen and national of India. He is a Regional Center EB-5 investor. Plaintiff Harish Thummala maintains a permanent residence in Middletown, Delaware. He is joined in this action with the following dependents (collectively, the "Thummala Family").

a.      Plaintiff Meghana Reddy Elati is a citizen and national of India. She is Plaintiff Harish Thummala's spouse and received lawful permanent residence based on that relationship. She maintains a permanent residence in Middletown, Delaware.

7.      Defendant Ur M. Jaddou is Director of the United States Citizenship and Immigration Services ("USCIS"). She oversees the adjudication of all immigration benefits petitions under 8 U.S.C. § 1153(b)(5). Ms. Jaddou is sued in her official capacity.

## VENUE AND JURISDICTION

8.      This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331. *Califano v. Sanders*, 430 U.S. 99, 106 (1977).

9.      Under its federal question jurisdiction, this Court can hear claims under the *Administrative Procedure Act* (5 U.S.C. § 501, *et seq.*) ("APA").

10.      Under the APA, this Court can compel agency action that is unreasonably delayed or unlawfully withheld. 5 U.S.C. §§ 555(b), 706.

11.      Under its federal question jurisdiction, this Court can also provide declaratory relief under 28 U.S.C. § 2201.

12.      Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(C) because Plaintiffs reside in New Castle, Delaware and there is no real property involved.

3

13.    No statute or regulation requires an administrative appeal of the delays Plaintiffs challenge in this case. Thus, Plaintiffs have exhausted all administrative remedies or constructively exhausted all administrative remedies. *Darby v. Cisneros*, 509 U.S. 137 (1993).

14.    The claims in this matter are appropriately joined under Federal Rule of Civil Procedure 18(a) because all Plaintiffs' claims are made against the same Defendant.

15.    The parties in this matter are appropriately joined under Federal Rule of Civil Procedure 20(a)(1)(A) because the Plaintiffs assert a right to relief jointly or severally with respect to and arising out of the same series of transactions or occurrences, namely the unlawful delay of the adjudication of their Form I-829.

## LEGAL BACKGROUND

16.    Plaintiffs provide the Court with a legal and practical overview of the EB-5 visa, including the Agency's practices in adjudicating EB-5 related benefits. Beyond unconscionable processing times, these facts taken together paint a picture of a deeply dysfunctional immigration service, issuing arbitrary and constantly shifting guidance divorced from reasoned agency decision-making. Their actions include submission of contradictory sworn statements under oath, as well as illegally expediting some EB-5 investors over others.

### *The EB-5 Program*

17.    Congress created the "EB-5" immigrant visa as part of the *Immigration Act of 1990*. 104 Stat. 4978, P.L. 101-649 (Nov. 29, 1990).

18.    Generally, an EB-5 visa is available to a foreign national who invests the requisite amount of capital into a new commercial enterprise ("NCE") that creates 10 jobs for lawful American workers. 8 U.S.C. § 1153(b)(5).

19.     EB-5 investments were originally limited to "direct investments"—where a foreign national invested the requisite amount in an NCE and that enterprise directly created the requisite jobs by hiring qualifying employees (W-2) and placing them onto payroll.

20.     In 1992, Congress passed legislation to allow EB-5 investors to be credited for indirect job creation, allowing for the more efficient pooling of their investments, and accordingly to fund much larger projects. *See* The Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1993, § 610, 106 Stat. 1828, P.L.102–395 (Oct. 6, 1992).[4]

21.     To take advantage of the more flexible terms for a pooled investment and job creation, investors would need to invest through an approved "Regional Center."[5]

22.     A "Regional Center" is a corporate entity that "is involved with the promotion of economic growth, including increased export sales, improved regional productivity, job creation, and increased domestic capital investment." 8 C.F.R. § 204.6(e).

23.     Once approved, NCEs associated with designated Regional Centers may take advantage of the indirect job creation methodologies for EB-5 investment.

---

[4] Though originally designated as a "pilot program," the Regional Center model has been in place since 1992. Congress removed the word "pilot" in 2012. *See* Policy Memo, USCIS, PM-602-0083, EB-5 Adjudications Policy, (May 30, 2013). In March 2022, the EB-5 program was substantially rewritten by Congress. However, those statutory changes do not substantively affect the adjudication of Plaintiffs' cases.

[5] Unlike a direct EB-5 petition, a "Regional Center" EB-5 petition may rely on indirect job creation—a Regional Center NCE may show job creation through economic modeling based on, for example, the impacts of construction spending. *See* 8 C.F.R. § 204.6(m)(7)(ii). An NCE associated with a Regional Center similarly need not make any direct W-2 hires. Regional Center related petitions generally accommodate larger numbers of investors in the same NCE because of job creation scaling. A given project might, for example, create hundreds or thousands of jobs, calculated through "reasonable methodologies" as contemplated by 8 C.F.R. § 204.6(m)(7)(ii).

24.     Regional Center related EB-5 petitions dominate USCIS's modern inventory of EB-5 filings, accounting for the vast majority of visas issued in any given year. Many of these kinds of petitions are based on templated material provided by the Regional Center to the investor. As such, the Agency should be able to adjudicate these kinds of petitions efficiently given their largely templated formats.

*The Three-Step EB-5 Immigration Process and Dysfunctional*

*Regional Center Case Processing*

25.     To acquire lawful permanent residency through an investment in the United States under the EB-5 program, 8 U.S.C. § 1153(b)(5), a foreign national must go through three major steps.

26.     The investor must initially place the requisite funds at risk in an NCE and create at least 10 jobs or show they will be created through a comprehensive business plan. 8 U.S.C. § 1153(b)(5); 8 C.F.R. § 204.6.

27.     The investor then must file a Form I-526, Petition for Alien Investor. [6]

28.     This process can last for years. *See* USCIS Historic Form I-526 Processing Times, (attached as **Exhibit A**).

29.     Once the I-526 is approved and the investor's priority date is current, the foreign national investor and his/her family must proceed with the second step – the acquisition of only conditional lawful permanent residency. Conditional permanent residency expires two years after its granting. 8 U.S.C. §§ 1186b(a)(1), (d)(2)(A).

---

[6] *See generally,* I-526, Immigrant Petition by Standalone Investor, U.S. Citizenship & Immigration Services, *available at* https://www.uscis.gov/i-526 (*last accessed* Dec. 31, 2024).

30.     Near the end of two years of residency, the foreign national investor and his/her family must complete a third step to acquire full lawful permanent residency. *Id.* at §1186b(d)(2)(A).

31.     Congress provided strict timelines for this third step in the process.

32.     The conditional lawful permanent resident must file a Form I-829, Petition by Investor to Remove Conditions on Permanent Resident Status within 90 days of the second anniversary of receipt of such status: "a petition [to remove conditions] shall be filed during the 90-day period immediately preceding the second anniversary of the alien's investor's lawful admission for permanent residence." *Id.* at §1186b(d)(2)(A).[7]

33.     The Agency interprets this language as mandatory, and if the conditional lawful permanent resident fails to timely file a petition to remove conditions without good cause, *see id.* at § 1186b(b), the Agency initiates removal proceedings against the conditional lawful permanent resident. *Id.*

34.     Upon receipt of a timely filed Form I-829, the Agency must conduct an in-person interview within 90 days, affirmatively waive the interview deadline, or affirmatively waive the interview requirement. *See* § 1186b(d)(3).

35.     The Agency then "shall make a determination within 90 days of the date of [] such filing or interview (whichever is later) . . ." *Id.* at 1186b(c)(3)(A).

36.     The Agency, however, almost never schedules interviews for I-829 petitioners and their families. Upon information and belief, the Agency only schedules such interviews where there are concerns of national security or criminal admissibility issues.

---

[7] *See also* I-829, Petition by Investor to Remove Conditions on Permanent Resident Status, U.S. Citizenship & Immigration Services, *available at* https://www.uscis.gov/i-829 (*last accessed* Dec. 31, 2024).

37.     Beyond not scheduling interviews, the Agency has never routinely met the mandated timeframes for adjudication in the past two decades. *See, e.g.*, **Exhibit A**.

38.     In fact, "DHS acknowledges that processing times for many forms, including Form I–829, have exceeded the goals established by USCIS. Furthermore, DHS acknowledges its obligation to adjudicate Form I–829 filings within 90 days of the filing date or interview, whichever is later."[8]

39.     If the Agency approves the Form I-829, the conditional lawful permanent resident becomes a lawful permanent resident without conditions.

40.     Generally, the Agency then issues lawful permanent residency cards (Form I-551 or a "Green Card") valid for 10 years at a time.

41.     Further, because the time spent in conditional lawful permanent residency counts towards naturalization, *see id*. at 1186b(e), once the total periods of time spent in conditional lawful permanent residency and lawful permanent residency exceed five years, the foreign national may be eligible to naturalize as a United States citizen. *See* 8 U.S.C. § 1427. But the foreign national cannot naturalize until he or she acquires lawful permanent residency without conditions.

*I-829 Processing Times*

42.     The Agency created the Immigrant Investor Program Office ("the IPO") to decide all EB-5 related petitions, including Forms I-829. The IPO is in Washington, D.C.

43.     While the number of Form I-829 submissions has remained relatively static during the past few years, the Agency's reported processing times have grown significantly, even slowing

---

[8] *See* Final Rule, U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements, 85 Fed. Reg. 46788, 46854 (Aug. 3, 2020).

compared to adjudication timeframes during the COVID-19 pandemic. The Agency reports the following average processing times for each of the same fiscal years:

| Fiscal Year | Processing Times in Months |
|---|---|
| 2019 | 25.9 |
| 2020 | 24.8 |
| 2021 | 34.5 |
| 2022 | 45.5 |
| 2023 | 49.4 |
| 2024 (up to November 30, 2024) | 41.0 |

*See* Historical National Median Processing Time (in Months) for All USCIS Offices for Select Forms By Fiscal Year, (**Exhibit A**), *available at* https://egov.uscis.gov/processing-times/historic-pt (*last accessed* Dec. 31, 2024).

44.    As of the filing of this complaint, the Agency reports a processing time of 53.5 months. *See* USCIS Processing Times Form I-829, *available at* https://egov.uscis.gov/processing-times/ (*last accessed* Dec. 31, 2024) (attached as **Exhibit B**).

45.    As discussed above, in October and November 2020, the Agency reported processing times of 36.5 to 234 months. *See* IIUSA.org, I-829 Processing Time Dashboard, (attached as **Exhibit C**). Similar times were repeated in March-April 2021.

46.    Ironically, the Agency reported it takes only 8.15 hours of "touch time" to fully adjudicate a Form I-829.[9]

*The IPO Operations are in Disarray*

47.    On July 1, 2021, USCIS stated that Congressional authorization for the EB-5 Regional Center Program lapsed. It did not return until May 14, 2022.

48.    As a result of the lapse, USCIS had taken the position that it must suspend adjudications of Regional Center based Forms I-526 and I-485 (the acquisition of conditional

---

[9] *See* Proposed Rule, U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements, 84 Fed. Reg. 62280, 62292 (Nov. 14, 2019).

permanent residency).

49.     Although President Biden reauthorized the EB-5 Regional Center Program on
March 15, 2022, USCIS had not yet announced it would begin adjudicating new I-526 Regional
Center filings.

50.     USCIS has only recently "resumed processing regional center-based Form I-526 .
. . filed on or before the sunset of the previous regional center program on June 30, 2021."[10]

51.     The July 1, 2021 lapse and the ensuing delay in resumption of new EB-5 filings
accordingly resulted in IPO resources becoming more available to adjudicate Forms I-829 (such
as those at issue in this suit) because IPO adjudicators normally assigned to adjudicate Forms I-
526 and I-924 allegedly affected by the lapse had no adjudications to make. It is a simple process
for the Agency to flex adjudicators from one EB-5 process to another.

52.     In public statements, senior USCIS officials maintained that IPO resources were
flexed to deal with the I-829 backlogs. However, this is not supported by any publicly available
evidence.

53.     Indeed, Form I-829 processing has slowed down. *See,* **Exhibit A**.[11]

54.     Despite the Agency's alleged efforts to decrease processing times, Form I-829
processing  times at best remain stagnant, and at worst continue to climb. In October 2022, Form
I-829 processing time was 57 months. In November 2022, Form I-829 processing time was 60
months. In March 2023, the processing time was 61.5 months. In January 2024, the processing

---

[10]   *See EB-5 What's New,* U.S. Citizenship and Immigration Services, *available at*
https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/eb-5-whats-new-0 (*last accessed* Dec. 31, 2024).
[11]   *See also* Lucid Professional Writing, "FY2022 Q1 USCIS Processing Report" March 14,
2022, available at https://blog.lucidtext.com/2022/03/14/fy2022-q1-uscis-processing-report/
(*last accessed* Dec. 31, 2024) ("Comparing FY 2022 Q1 volumes with the average for 2017-2018,
IPO processed 2 times fewer I-829 and 54 times fewer I-526.").

time reached 66.5 months. Now, the processing time is 53.5 months. *Compare* **Exhibit B** (I-829 Processing time on November 25, 2024) with **Exhibits D** (I-829 processing time on October 21, 2022), **E** (I-829 processing time on November 30, 2022), **F** (I-829 processing time on March 15, 2023), and **G** (I-829 processing time on January 12, 2024).

55.     The IPO reported that it had 11,150 pending Forms I-829 at the end of FY 2022. It had completed only 459 Forms I-829 in Q4. At that rate, it would take the IPO over <u>72 months</u> (2,190 days) to process a currently pending Form I-829. This is unreasonable, especially in light of a statute mandating the Agency to adjudicate Forms I-829 <u>within 90 days</u>.[12]

56.     Credible sources indicate that many IPO adjudicators are sitting idle, rather than taking on the substantial Form I-829 backlog.[13]

57.     Stakeholder accounts paint a picture of a deeply dysfunctional USCIS office. Filings are often lost,[14] emails go unanswered, needed guidance arrives too late to be effective, address updates are not processed, and applicants are scheduled for biometrics appointments despite them being unnecessary.

---

[12] *See* Lucid Professional Writing, "Processing Data" Jan. 6, 2023, available at https://blog.lucidtext.com/processing-data/ (*last accessed* Dec. 31, 2024); USCIS, "Number of Service-wide Forms By Quarter, Form Status, and Processing Time" July 1, 2022 – September 30, 2022, *available at* https://www.uscis.gov/sites/default/files/document/data/Quarterly_All_Forms_FY2022_Q4.pdf (*last accessed* Dec. 31, 2024).

[13] *See*, e.g., Lucid Professional Writing, "FY2021 Q4 update on I-526 and I-829 Processing" Dec. 16, 2021, available at https://blog.lucidtext.com/2021/12/16/fy2021-q4-update-on-i-526-and-i-829-processing/ (*last accessed* Dec. 31, 2024).

[14] *See, e.g.,* BaniasLaw X (formerly Twitter) Feed "This is from an email just received from @TheJusticeDept @USCIS lost a client's I829. Lost it. But for litigation, how long do you think they would have waited? How many more have they lost?" Dec. 17, 2021, *available at* https://twitter.com/BaniasLaw/status/1471959825395367936?s=20 (*last accessed* Dec. 31, 2024); *see also Nadhar v. Renaud*, 2022 WL 684338 (D. Ariz. Mar. 8, 2022) (mentioning how USCIS lost a file belonging to a plaintiff).

*The Thummala Family*

58.     Plaintiff Harish Thummala is an EB-5 investor. He invested at least $500,000 in the NCE BRC Partners VI, LP, administered by Behring Regional Center, LLC (Formerly: Berkeley Regional Center Fund LLC).

59.     Plaintiff Harish Thummala was granted lawful permanent residency following approval of his Form I-526. He timely filed Form I-829 on June 20, 2024. The Agency received it and assigned individual receipt numbers as follows:

| Individual | Receipt Number |
|---|---|
| Harish Thummala | WAC2490110088 |
| Meghana Reddy Elati | WAC2424850373 |

60.     Over 90 days have passed since the filing. The Agency has not provided the Thummala Family with notice that it will forgo an interview.

61.     Over 90 days have passed since the filing. The Agency has not sought to interview any member of the Thummala Family.

62.     Over 90 days have passed since the filing. The Agency has taken no substantive action on the Thummala Family's cases.

63.     The Agency's delay in adjudicating the Thummala Family's Form I-829 has caused them significant hardship.

64.     The Agency's delay has delayed the return of the Thummala Family's investment capital. They understood that their investment capital would necessarily be at risk for some time, but they did not expect it to be at risk for this long. Once recovered, they intend to use this capital to buy a home in a better school district for their United States citizen children (ages 3 and 7). They also hope to invest in new ventures and their retirement but feel unable to do so as long as

their investment is tied up. They are hesitant to take additional risks and pursue new business and career opportunities when their future in the United States is uncertain.

65.     The delayed return of their investment capital has stifled the Thummala Family's financial growth. This adds the staggering cost of the EB-5 process, which now includes the added cost of filing a federal lawsuit to seek judicial redress for the Agency's unreasonable delay. The harms they face worsen each other in a vicious cycle with no end in sight.

66.     The Thummala Family's ability to travel freely is also compromised by the Agency's delay. Many airport officials do not understand the Thummala Family's status, nor do they always understand that I-829 applicants should be able to use their expired conditional Green Cards and Form I-829 receipt notices to travel. Until the Thummala Family has the conditions removed from their permanent resident status, they are afraid that if they travel abroad, they may be questioned in secondary inspection, denied boarding, or denied re-entry to the United States. The Thummala Family is afraid that they could be separated from one another or separated from their hard-won lives in the United States. The prospect of being separated from their young United States citizen children is terrifying.

67.     The risks of international travel have indefinitely separated the Thummala Family from their family abroad and the consequences have been devastating. They missed Plaintiff Meghana Reddy Elati's sister's wedding. They have been unable to help care for their aging parents, and their parents have missed opportunities to bond with their young grandchildren in person. The delay has robbed the Thummala Family of experiences and memories that they can never recover to the detriment of their psychological and emotional wellbeing.

68.     The financial hardship and persistent uncertainty of their future has caused the Thummala Family additional psychological distress. They have made significant sacrifices to

secure their future in the United States, but as a mixed-status family, nothing is guaranteed. Until they become unconditional permanent residents of the United States, the Thummala Family cannot dream about or plan for their future. They cannot make long-term plans for their careers, housing, education, business ventures, or additional investments because they do not know where they will be.

69.    The Thummala Family carries a heavy mental and emotional load, which limits their ability to advance their careers and build their lives in the United States. It is a heartbreaking situation for the Thummala Family to be in after making such a substantial financial investment in the United States.

70.    Due to the Agency's delay, the Thummala Family has suffered significant harm. They will continue to suffer until the Agency adjudicates their Form I-829.

<u>**COUNT I**</u>
**(APA – Agency Action Unlawfully Withheld)**

71.    Plaintiffs reallege all facts above as though restated here.

72.    The APA requires reviewing courts to "compel agency action unlawfully withheld." 5 U.S.C. § 706.

73.    The delays faced by Plaintiffs are not reasonable under the present circumstances.

74.    Congress specifically mandated that Forms I-829 should be decided in (conceivably) a maximum of 180 days:

> the Secretary of Homeland Security shall make a determination, within 90 days of the date of such filing or interview (whichever is later), as to whether the facts and information described in subsection (d)(1) of this section and alleged in the petition are true with respect to the qualifying commercial enterprise.

8 U.S.C. § 1186b(c)(3)(A).

75.    At the outset, however, USCIS has unlawfully withheld action on Plaintiffs' Form I-829 as they have endured a wait of at least 90 days since filing.

76.    These (in)actions are unlawful.

77.    The Agency did not take any substantive action within 90 days of receiving Plaintiffs' Form I-829. Accordingly, this delay is *per se* unreasonable, and the Court should enforce the adjudication deadline stated in 8 U.S.C. § 1186b(c)(3)(A).

78.    Defendant has never justified her Agency's illegally long processing times of Form I-829.

79.    As stated by the Ninth Circuit, "Congress has specifically provided a deadline for performance … so no balancing of factors is required or permitted" in weighing whether to compel federal agency action. *Biodiversity Legal Foundation v. Badgley*, 309 F.3d 1166, FN 11 (9th Cir. 2002).

80.    As also stated by the Fourth Circuit,

> If a party has successfully demonstrated an unlawfully withheld agency action under § 706(1), the court must enter an appropriate order and secure the agency's compliance with the law. If the agency's legal obligation falls within the scope of § 706(1), such an order must issue regardless of equitable or policy considerations.

*South Carolina v. United States*, 907 F.3d 742, 756 (4th Cir. 2018).

81.    Given the delays in the instant case, this Court must accordingly award judgment in favor of the Plaintiffs. Discovery is accordingly unnecessary.

82.    Plaintiffs are harmed by this delay as their pending immigration status fuels their anxiety as to their ongoing ability to remain in the United States without condition. Further, the Agency's inaction has resulted in the lack of the ability for Plaintiffs to conveniently carry valid, unexpired proof of lawful permanent resident status, as required by federal law. This results in

difficulties to obtain state law benefits, difficulties in proving valid status to third parties, and difficulties in international travel. Further, without consistently and timely producing suitable proof of lawful permanent resident status, the Agency forces Plaintiffs to potentially violate 8 U.S.C. § 1304(e), which is a misdemeanor.

## COUNT II
### (APA – Unreasonable Delay)

83.    Plaintiffs re-allege all allegations contained herein.

84.    The APA requires USCIS to make a decision on Plaintiffs' Form I-829 "within a reasonable amount of time." 5 U.S.C. § 555(b).

85.    USCIS has a non-discretionary duty to make a decision on Plaintiffs' pending Form I-829. *See* 8 U.S.C. §1186b; 8 C.F.R. § 216.6.

86.    USCIS has unreasonably delayed action on Plaintiffs' pending I-829 application, an unreasonable delay under the factors laid out in *Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.,* 145 F.3d 120 (3d Cir. 1998). Those factors include:

(1) The length of time that has elapsed since the agency came under a duty to act;
(2) The reasonableness of the delay as judged in the context of the statute authorizing the agency's action;
(3) The consequences of the agency's delay;
(4) "[a]ny plea of administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources."

*See Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.* at 123 (internal citations omitted); *see also Prometheus Radio Project v. Fed. Communications Comm'n,* 824 F.3d 33, 39 – 40 (3d Cir. 2016)(using the *Oil, Chemical & Atomic Workers Union* factors to "balance the importance of the subject matter being regulated with the regulating agency's need to discharge all of its statutory responsibilities under a reasonable timetable").

87.    Assuming, *arguendo*, that these factors are relevant, each favors compelling agency action.

88.    First, a significant and unreasonable length of time has elapsed since the Agency came under a duty to act.

89.    Congress mandated the Defendant to adjudicate a Form I-829, Petition by Investor to Remove Conditions on Permanent Resident Status within 90 days of filing or an interview, whichever is later. 8 U.S.C. § 1186b(c)(3). To date, over 193 days have elapsed without an interview, adjudication, or any other form of substantive action by the Agency. This is **more than twice** the amount of time the statute permits.

90.    Second, in the context of the statute authorizing the Agency's actions, the delay is unreasonable.

91.    Congress has mandated that USCIS decide Forms I-829 within 90 days of their submission or an interview thereon. While the Agency does not apparently recognize 8 U.S.C. § 1186b(d)(2)(A) as a mandatory timeline, it interprets similar provisions of § 1186b to mandate conditional lawful permanent residents file Forms I-829 on a strict timeline. *See Clark v. Martinez*, 543 U.S. 371 (2005) (reversing an agency's disparate interpretations of similar language).

92.    USCIS has never routinely met this deadline, nor has the Agency ever undertaken good faith efforts to do so.

93.    In fact, on January 23, 2023, USCIS released an announcement that it will begin issuing receipt notices that extend the validity of Green Cards for 48 months after the card's expiration date. *See* **Exhibit H,** USCIS Extends Green Card Validity for Conditional Permanent Residents with a Pending Form I-751 or Form I-829. This brings into question whether USCIS is even trying to process Forms I-829 within 90 days, as required by law.

94.    Further, Congress provided separate, more general notions of the appropriate timeline for adjudicating Forms I-829 by announcing a timeline for adjudication of immigrant visa

petitions of 180 days. 8 U.S.C. § 1571(b). USCIS attempts to comport with this legislative aspiration. Thus, Congress indicates it should take 180 days to act on an immigrant benefit request, and USCIS purports to follow this legislative aspiration.

95.     This Court should not consider USCIS's published processing times dispositive of whether a delay is reasonable because the processing times for Forms I-829 are inconsistent and not credible and, "depending on the grounds for the delays, even processing times at the low end of the range could be unreasonable." *Raju v. Cuccinelli*, No. 20-cv-01386-AGT, 2020 U.S. Dist. LEXIS 153269, at *6 (N.D. Cal. Aug. 14, 2020).

96.     Between November and December 2020, the processing times went from 36.5 to 234 months to 33 to 59 months. This drastic adjustment over the course of a month indicates these times are not reliable. The Agency is aware its processing times are inaccurate.

97.     Even if the Agency's processing times were accurate or reliable, the Agency currently represents that the average processing time for a Form I-829 is 53.5 months (*see* **Exhibit B**). The Agency seems content to represent that, on average, it takes **more than four times** the amount of time permitted by statute to adjudicate a Form I-829. The Agency also appears to be indifferent to the harm its chronic delay inflicts on Plaintiffs and similarly situated investors.

98.     Third, the consequences of the Agency's delay have caused significant harm to Plaintiffs. The delay impacts health and human welfare, not merely economic interests.

        a.     USCIS's delay prevents Plaintiffs from acquiring unconditional lawful permanent residency status. It also prevents Plaintiffs from acquiring long-term proof of lawful status. Although the Agency provides Form I-829 applicants with evidence of their continued lawful status following receipt of the Form I-829, its average delays are longer than the validity period of this evidence.

b.      Therefore, immigrants must request ongoing proof of status through obtaining stamps in their passports. These stamps must be awarded at in-person appointments, known as INFOPASS, with USCIS at their field offices. The Agency, however, makes obtaining such stamps extremely difficult and often refuses to provide INFOPASS appointments. See **Exhibit I** (USCIS email denying INFOPASS appointment for I-551 stamping, depriving immigrant of proof of his ongoing status).

c.      Just recently, USCIS announced that "Lawful permanent residents may receive temporary evidence of their lawful permanent resident status by mail rather than physically visiting a field office to receive an Alien Documentation, Identification and Telecommunication (ADIT) stamp (also known as an I-551 stamp)."[15]

d.      This is significant because it is extremely difficult to obtain ADIT stamp appointments at a field office which leaves lawful permanent residents without evidence of their status. Yet, USCIS initially excluded lawful permanent residents with a pending Form I-829 and an expired extension notice from those that "are entitled to evidence of status and may require temporary evidence of their status in the form of an ADIT stamp." *Id.* They were excluded despite the fact that several other groups, including those with a pending Form I-751 which is the parallel form for Form I-829 in the family immigration context were explicitly included from the start. *Id.* USCIS later issued an alert stating, "On March 16, 2023, we announced our mail delivery process for receiving a Form I-94 with an ADIT stamp. Form I-829 petitioners whose petitions are still pending adjudication but whose Permanent Resident Card and extension notices have expired *may*

---

[15] *See* USCIS Announces Additional Mail Delivery Process for Receiving ADIT Stamp, *available at* https://www.uscis.gov/newsroom/alerts/uscis-announces-additional-mail-delivery-process-for-receiving-adit-stamp (*last accessed* Dec. 31, 2024).

be eligible to use that process."[16] Neither this alert nor USCIS' announcement describes how an investor in this situation *may* qualify.[17]

      e.     While USCIS has ostensibly made some efforts to improve this situation by making stamps available to some applicants by mail, USCIS often takes so long to mail these stamps that conditional permanent residents cannot travel for family or business emergencies.

      f.     USCIS even makes it more difficult for conditional permanent resident status holders to petition for family members.

      g.     The Agency's intransigence limits the length of I-829 applicants' drivers licenses and other state benefits. Because of this lack of proof of status, USCIS's delay may force I-829 applicants to commit misdemeanors by not having unexpired proof of status under 8 U.S.C. § 1304(e).

99.     Fourth, any pleas of administrative error, inconvenience, practical difficulty, or competing priorities ring hollow in light of the Agency's chronic disorganization and ever-increasing administrative fees. Any such pleas do not supersede the statutory deadline set by Congress.

100.     USCIS has no rule of reason for the adjudication of Forms I-829.

101.     USCIS does not decide them on a "first in, first out" basis, and it never has.

102.     USCIS regularly adjudicates later-filed Forms I-829 prior to earlier-filed Forms I-829.

---

[16] *See Form I-829, Petition by Investor to Remove Conditions on Permanent Resident Status Alert, available at* https://www.uscis.gov/i-829#:~:text=On%20March%2016%2C%202023%2C%20we%20announced%20our,may%20be%20eligible%20to%20use%20that%20process. (*last accessed* Dec. 31, 2024) (emphasis added).
[17] *See* USCIS Announces Additional Mail Delivery Process for Receiving ADIT Stamp, *supra* FN 15.

103.    Upon information and belief, USCIS applies a rule of reason based on NCE adjudication, and then a first in, first assigned processing logic for Forms I-829. But it has no assignment rationale, logic, or policy. As such, USCIS has no effective rule of reason for adjudicating Forms I-829.

104.    Moreover, USCIS takes fees from petitioners in exchange for timely adjudicating Forms I-829. USCIS sets the fee rate based upon the costs it incurs to process benefit applications in a timely fashion. USCIS cannot defend its actions by alleging a lack of resources when it charges fees to pay for resources needed to fulfill its statutory duty.

105.    Additionally, USCIS has stated "We adjudicate applications on a case-by case basis. Each case is unique, and some cases may take longer to adjudicate." [18] This post does not confirm a rule of reason. Instead, it acts as a justification of inconsistent processing times. This vague language is in conflict with USCIS' claimed first in, first out rule.

106.    USCIS's execution of adjudications does not match its claimed rule, across multiple Form types. This has not gone unnoticed from the stakeholders affected by USCIS' illogical processing, as one immigration attorney noted:

> USCIS says it is taking 7 months to process EAD applications for those with a pending I-485. Gladly, I received an approval in just 4 days, but what's going on with processing times? Clearly these are not processed First In, First Out.[19]

107.    Statements like this show that USCIS is not bound by any rule of reason. The Agency's confirmation that it adjudicates petitions on a case-by-case basis is just the type of process that can create inconsistent processing times, seemingly at random, leaving applicants

---

[18] *See* USCIS's X (formerly Twitter) Feed, Dec. 14, 2023, *available at* https://twitter.com/USCIS/status/1735295336816529772 (*last accessed* Dec. 31, 2024).

[19] *See* Emily Neumann's X (formerly Twitter) Feed, Mar. 6, 2024, *available at* https://twitter.com/immigrationgirl/status/1765420577441866016 (*last accessed* Dec. 31, 2024).

without any assurances. Adjudicating forms on a case-by-case basis and adjudicating according to a rule of reason are in direct conflict.

108.    Compelling agency action here would have no effect on a USCIS activity of a higher or competing priority. The agency staffs an office whose sole mission is to process Forms I-526, Forms I-829, and Forms I-956. By statute, the Agency is required to charge a fee that recaptures the actual expenses incurred in the adjudication process. Form I-829 is the second-most expensive filing that an individual may file in the entire U.S. immigration system. The funds taken through application receipts are sufficient to accomplish the task of adjudicating within 90 days.

109.    The current delay of the Plaintiffs' Form I-829 is not due to a lack of agency resources because USCIS sets the fees it charges to pay for personnel to process petitions in a timely fashion. Moreover, the current historic delay durations accelerated after additional employees were hired and fees were increased.

110.    Further, the EB-5 Regional Center program had temporarily lapsed, as of July 1, 2021, as discussed throughout this Complaint. It was to resume on May 14, 2022. While this had no effect on whether the Agency may adjudicate Forms I-829, it did free up significant numbers of adjudicators who would otherwise be adjudicating affected petitions (e.g., Regional Center affiliated Forms I-526). One would assume Form I-829 processing times would have sharply fallen. They have not, and in fact, the Agency admits that processing times increased during the lapse.[20]

---

[20] *See* USCIS Extends Green Card Validity for Conditional Permanent Residents with a Pending Form I-751 or Form I-829, available at https://www.uscis.gov/newsroom/alerts/uscis-extends-green-card-validity-for-conditional-permanent-residents-with-a-pending-form-i-751-or (*last accessed* Dec. 31, 2024) (USCIS extending validity of Green Cards to 48 months after the card's expiration "to accommodate current processing times for Form I-751 and Form I-829, which have increased <u>over the past year</u>.") (emphasis added).

111.    A similar lapse occurred in 2018-19 and during that time Form I-829 processing times increased significantly. <u>The Agency had unprecedented capacity to adjudicate Forms I-829 given the lapse of the Regional Center Program</u>. Available adjudicators were and are sitting idly. Moreover, the entire office sits in total dysfunction, as alleged above.

112.    There is no "line" for Forms I-829 because USCIS does not adjudicate Forms I-829 on a first in first out basis.

113.    The Agency is deeply dysfunctional. As discussed above, the Agency routinely loses files. It refuses to respond to queries. It schedules biometrics appointments that are unnecessary.

114.    Upon information and belief, the Agency has a pattern and practice of delaying adjudication of Forms I-829.

115.    The Agency has taken affirmative actions, unknown to the public, to inflate USCIS' published processing times and purposefully delay adjudications of Form I-829 petitions. For example, as stated by the Defendant (while in her capacity as a private citizen):

> [S]ervice for fee-paying customers has been slowly and methodically eroding due to a never-ending cycle of new, unprecedented and ineffective policy changes. USCIS was primarily enacted to be a services agency; so it should serve those who make requests of it, not delay them with ever-increasing, inefficient and ineffective policy changes that make it more and more difficult to not only receive an approval where it is authorized by law, but also a timely response.[21]

116.    Despite USCIS' claim that applicants can prove their status with an expired Green Card and the extension notice receipt, USCIS itself has requested further evidence of a conditional

---

[21] Jaddou, Ur, "Trump Administration Policies Creating and Exacerbating USCIS Backlog and Processing Delays" (Jul. 17, 2019), *available at* https://americasvoice.org/press_releases/trump-administration-policies-creating-and-exacerbating-uscis-backlog-and-processing-delays/ (*last accessed* Dec. 31, 2024).

permanent resident's status despite that petitioner providing USCIS with his expired Green Card and extension notice. *See* **Exhibit J.** The Agency is acting in bad faith by issuing temporary half-baked solutions to a problem that it itself is creating and then failing to uphold its duties to ensure the success of those solutions.

117.    Moreover, the "utter indifference to a congressional deadline," exemplifies bad faith. *In re Barr Labs., Inc.,* 930 F.2d 72, 76 (D.C. Cir. 1991) (*citing In re Monroe Communications Corp.,* 840 F.2d 942, 946–47 (D.C.Cir.1988)).

118.    USCIS has "ignored duties that the [Immigration and Nationality Act] imposes on them." *Manatt v. United States Dep't of Homeland Sec.*, 473 F. Supp. 3d 409, 413 (E.D. Pa. 2020). Yet, "being the Government does not entitle them to special treatment. If anything, the opposite should be true. Government agencies should hold themselves up to the highest standards, as an example of lawfulness, rather than seeking special treatment." *Id.* at 413-14.[22]

119.    Each *Oil, Chemical & Atomic Workers Union* factor weighs in favor of ordering USCIS to issue a decision on Plaintiffs' petitions; thus, USCIS's delay is arbitrary and capricious under 5 U.S.C. § 706.

120.    These delays are not substantially justified.

### COUNT III
### *Equal Access to Justice* Fees

121.    Plaintiffs re-allege all allegations contained herein.

122.    USCIS's current delay is substantially unjustified under the APA.

123.    Plaintiffs are otherwise qualified for fees under the *Equal Access to Justice Act*.

---

[22] *See also See Dep't of Homeland Sec. v. Regents of U. of Cal.,* 591 U.S. 1, 24 (2020) ("[While m]en must turn square corners when they deal with the Government[,] . . . the Government should turn square corners in dealing with the people." (internal quotation marks and citation omitted)).

124.    Plaintiffs are entitled to reasonable attorney's fees under the *Equal Access to Justice Act.*

## PRAYER FOR RELIEF

125.    Plaintiffs pray that this Court will:

a.    Declare all delays described above in adjudication of the Plaintiffs' Form I-829 unreasonable;

b.    Enter an order requiring the Agency to collect any needed biometrics within seven days;

c.    Enter an order compelling the Agency to make a decision on Plaintiffs' Form I-829 within 10 days, and if the Agency issues a request for additional evidence, order the Agency to make a final decision thereon within 30 days of its receipt of the response to the request for evidence;

d.    Enter an order compelling the Agency to provide ongoing evidence of status upon the expiration of any receipt notices;

e.    Enter an order compelling the Agency to print any associated Green Cards within 10 days of Form I-829 approval;

f.    Enter an order compelling the Agency to deliver any awarded Green Cards to the Plaintiffs' correct address(es); and

g.    Enter and issue other relief that this Court deems just and proper.

Dated:  January 2, 2025                              Respectfully submitted,


                                        */s/ Karen M. Grivner*
                                        Karen M. Grivner, Esq.
                                        Supreme Court ID 004372
                                        CLARK HILL PLC
                                        824 N. Market St.
                                        Suite 710
                                        Wilmington, DE 19801
                                        302.250.4749
                                        kgrivner@clarkhill.com


                                        */s/ Matthew T. Galati*
                                        Matthew T. Galati, Esq.*
                                        THE GALATI LAW FIRM, LLC
                                        8080 Old York Road
                                        Suite 204
                                        Elkins Park, PA 19027
                                        215.310.0231
                                        matt@galati.law


                                        *Attorney for Plaintiffs*
                                        *Motion for Admission Pro Hac Vice Forthcoming*


26