IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MAYNE PHARMA LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. _____ |
| v. | ) | |
| | ) | |
| THERAPEUTICSMD, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Mayne Pharma LLC ("Mayne" or "Plaintiff"), by and through its attorneys, as and for its Complaint against Defendant TherapeuticsMD, Inc. ("TXMD"), alleges as follows:

## NATURE OF THE ACTION

1. This case arises out of TXMD's sale to Mayne of assets necessary to commercialize a portfolio of women's health products and prenatal vitamins.

2. On December 4, 2022, Mayne and TXMD entered into a series of agreements pursuant to which Mayne agreed to purchase from TXMD the exclusive licenses for certain health products (the "Products") and assets like supply and manufacturing agreements that would support the operation and commercialization of the product portfolio (the "Commercialization Assets") for which Mayne paid more than $153 million.

3. Unaware of TXMD's misrepresentations and its concealment of the true state of the Commercialization Assets, Mayne purchased them from TXMD pursuant to the Transaction Agreement, dated December 4, 2022, as amended (the "Transaction Agreement"). At the time of the acquisition (the "Acquisition"), TXMD knew that there were significant problems with the Commercialization Assets that substantially reduced their value and ultimately caused more than $11.5 million in damages to Mayne.

1

4.      Although TXMD knew about these problems, it fraudulently induced Mayne to purchase the Commercialization Assets by misrepresenting the state of the assets and concealing the truth about the contracts and relationships TXMD maintained with its suppliers.

5.      As a result of TXMD's conduct, Mayne suffered at least $11,526,586 in damages, representing lost profits and increased costs to obtain products that, unbeknownst to Mayne, had been discontinued by a TXMD supplier; increased costs for the continued supply of other products based on modified pricing terms TXMD had surreptitiously agreed to with a supplier, and inflated product inventory for which Mayne suffered losses post-closing.

6.      This action asserts claims for common law fraud and breach of contract based on TXMD's misstatements and omissions made in connection with the Acquisition, including among others: (a) the contractual representation that no material supplier would stop or decrease the rate of supply products; (b) the contractual representation that each supplier of TXMD is in compliance with all applicable laws related to the supply relationship with TXMD; (c) the contractual representation that TXMD provided true, correct, and complete copies of all agreements related to the products; (d) the contractual representation that each agreement related to the products was in full force and effect; (e) the contractual representation that no party to the agreements related to the products was in material breach or default; and (f) the contractual representation and covenant that TXMD did not and would not maintain more than 45 days of inventory for any product.

7.      After TXMD received its payments for the Acquisition, the truth began to emerge as all of these representations turned out to be false and misleading.  In the weeks and months that followed the Acquisition, Mayne discovered that TXMD had made a number of false statements and made surreptitious deals with suppliers that led to material problems with the Commercialization Assets and increased costs and damages now laid at Mayne's feet.

8. Defendant TXMD is liable to Mayne for its fraud as well as its breaches of the covenants, representations, and warranties in the Transaction Agreement.

## THE PARTIES

9. Plaintiff Mayne Pharma LLC ("Mayne") is a limited liability company formed under the laws of the state of Delaware. Mayne is solely owned by Mayne Pharma Commercial LLC, a limited liability company formed under the laws of North Carolina. Mayne Pharma Commercial LLC is solely owned by Mayne Holdings US Inc., a Delaware Corporation with its principal place of business in Raleigh, North Carolina. Mayne Holdings US Inc. is solely owned by Mayne Pharma Group Limited, a corporation based in and formed under the laws of Australia. Mayne is a specialty pharmaceutical company that commercializes a comprehensive portfolio of branded and generic drugs throughout the United States.

10. Defendant TherapeuticsMD, Inc. is a corporation formed under the laws of Nevada and has its principal place of business in Boca Raton, Florida. TXMD and its affiliates sold, marketed, distributed, manufactured, and otherwise commercialized throughout the United States certain pharmaceutical products.

## JURISDICTION AND VENUE

11. Jurisdiction for this Complaint lies within this Court pursuant to 28 U.S.C. § 1332.

12. The parties are diverse in citizenship pursuant to 28 U.S.C. § 1332(a)(2).

13. The amount of damages sought in this Complaint exceeds $75,000.00 exclusive of interest and costs, thus meeting the requirements of 28 U.S.C. § 1332(a).

14. The Court may exercise personal jurisdiction over Defendant, pursuant to 10 Del. Code § 3104(c)(1)-(2), because Defendant transacted business within the State, and pursuant to 28 U.S.C. § 1391(b)(3) because TXMD is subject to personal jurisdiction in this district with respect

to this action by its agreement under Section 13.10 of the Transaction Agreement, and there is no other district in which the action may otherwise be brought.

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(3) because TXMD is subject to personal jurisdiction in this district with respect to this action by its agreement under Section 13.10 of the Transaction Agreement, and there is no other district in which the action may otherwise be brought.

## FACTUAL BACKGROUND

### *The Acquisition*

16. On December 4, 2022, Mayne and TXMD entered into a series of agreements pursuant to which Mayne agreed to purchase from TXMD the exclusive licenses for certain novel women's health products: ANNOVERA®, IMVEXXY®, and BIJUVA®, a portfolio of prenatal vitamins in the United States, as well as selected Commercialization Assets including inventory, supplier relationships, and regulatory filings to support the operation and commercialization of the portfolio. One of those agreements was the Transaction Agreement, dated December 4, 2022 (the "Transaction Agreement"), which governed the sale, transfer, and conveyance to Mayne of certain "Transferred Assets" that were deemed necessary or useful for Mayne to sell, market, distribute, manufacture, and otherwise commercialize the licensed products. A true and correct copy of the Transaction Agreement is attached hereto as **Exhibit A**.

17. The Transferred Assets included New Drug Applications and Investigational New Drug Applications for the Products; certain Product inventory; and "Transferred Agreements," such as manufacturing and supply agreements with third parties.

18. Among the Transferred Agreements that formed the basis for the Acquisition was the Commercial Supply Agreement, dated September 28, 2018, between TXMD and QPharma

AB, and all SOWs thereto. QPharma now goes by the business name Sever Pharma Solutions ("Sever").

19.　　The main purpose of the Transaction Agreement was to transfer to Mayne assets that were "necessary or useful" for Mayne to sell, market, distribute, manufacture, and otherwise commercialize the Products. It was critical to Mayne that it understand which supply agreements and supplier relationships were in effect and the key terms of those relationships and agreements.

20.　　Accordingly, in addition to listing the Transferred Agreements that would govern the relationships between Mayne and the suppliers of the Products post-closing, the Transaction Agreement also set forth a disclosure schedule listing all of the suppliers of the Products for the past three fiscal years. TXMD represented to Mayne that no such supplier had notified TXMD that it would stop or decrease the supply of Products. Mayne relied on that representation to its detriment.

21.　　Despite the critical nature of these provisions, Mayne would not learn until after closing that TXMD made misrepresentations and omissions concerning the Transferred Agreements and TXMD's suppliers in material respects, which injured and continues to injure Mayne in an amount to be proved at trial, but which is at least $5,078,000..

### TXMD Misrepresents that Lang Pharma Would Continue Supplying Products

22.　　Pursuant to Section 7.15 of the Transaction Agreement, TXMD represented to Mayne that the following was true and correct both as of the date of the Transaction Agreement and as of the Closing Date:

> 7.15 <u>Suppliers</u>. Section 7.15 of the TXMD Disclosure Schedules sets forth the suppliers of the Products for each of the most recent three (3) fiscal years (as measured by the aggregate cost of Products purchased for such period) ("Material Suppliers"). No Material Supplier has notified TXMD or any member of the TXMD Group verbally or in writing that it will stop, or decrease the rate of,

5

supplying Products, including any such stop or decrease that would be reasonably likely, individually or in the aggregate, to be material to the Product Exploitation. To TXMD's Knowledge, (a) each supplier of TXMD and the TXMD Group or any of its controlled Affiliates is in compliance in all material respects with all applicable Laws relating to such supplier's relationship with TXMD or the TXMD Group or its Affiliates in connection with the Products and (b) there are no regulatory actions threatened in writing against such supplier.

23. Lang Pharma Nutrition, Inc. ("Lang") was a Material Supplier listed in Schedule 7.15 of the Transaction Agreement, and supplied prenatal vitamins to TXMD.

24. In Section 7.15 of the Transaction Agreement, TXMD falsely represented that none of the Material Suppliers—expressly including Lang—notified TXMD as of closing that they would stop or decrease the rate at which they had historically supplied products to TXMD.

25. Contrary to this representation, Mayne discovered after closing that Lang provided notice to TXMD of its intent to discontinue its supply of product to TXMD beginning in June 2023. This notice was conveyed to TXMD prior to the closing, including by e-mail on December 5, 2022. Upon information and belief, Lang and TXMD engaged in conversations or other communications regarding Lang's intention to terminate its supply to TXMD beginning before Mayne and TXMD executed the Transaction Agreement on December 4, 2022. Because TXMD knew of its discussions with Lang in which Lang communicated to TXMD its intention to terminate its supply to TXMD before the Transaction Agreement was executed, TXMD's false assurance that Lang would not stop or decrease the rate of its supply to TXMD was intended to induce Mayne into signing the agreement.

26. Although TXMD included Lang as a Material Supplier in the TXMD Disclosure Schedules, TXMD failed to disclose Lang's notice of discontinuation to Mayne. This failure to

disclose Lang's notice of discontinuation constituted a breach of Section 7.15 of the Transaction Agreement.

27. Due to TXMD's breach, Mayne was damaged in the amount of at least $5,078,000, representing, among other things, increased costs to obtain the prenatal vitamin products in light of Lang's plans to discontinue supply and resulting lost profits due to the delay in supply.

**TXMD Failed to Inform Mayne of Amended Pricing Terms With Sever Pharma**

28. Pursuant to Section 7.11 of the Transaction Agreement, TXMD represented to Mayne the following:

> 7.11 <u>Transferred Agreements and Ex-US License Agreements</u>. TXMD has provided true, correct and complete copies of all agreements, including all amendments and amendments thereto, related to the Products (including the Transferred Products) or the Product Exploitation as currently conducted by TXMD Group, including without limitation each of the Transferred Agreements. Except as set forth on Schedule 7.11(a) of the TXMD Disclosure Schedules, the Transferred Agreements are all of TXMD's, the TXMD Group's and its Affiliate's agreements, contracts, understandings and arrangements that are related to the Transferred Assets, the Products or the Product Exploitation as currently conducted by TXMD Group. Each Transferred Agreement is a legal, valid, and binding obligation of TXMD and is in full force and effect, and, each other party thereto, enforceable against TXMD and each other party thereto in accordance with its terms, subject to bankruptcy, insolvency, reorganization, moratorium, fraudulent transfer, or other similar Laws affecting or relating to the enforcement of creditors' rights generally from time to time in effect, and to general principles of equity. TXMD has not received written notice from any party to a Transferred Agreement claiming or alleging that TXMD has breached or is in default thereunder and TXMD and each member of the TXMD Group is not in material breach or default thereunder. Each other party to each Transferred Agreement is not in material breach or default thereunder. The Ex-US License Agreements are the only agreements, contracts, understandings and arrangements that provide for the license of Ex-Territory Products, by any member of the TXMD Group, to the Ex Territory Products outside the Territory.

29. TXMD was party to a Commercial Supply Agreement, dated September 28, 2018, with Sever Pharma Solutions AB f/k/a QPharma AB ("Sever" and such agreement, the "Sever Agreement"), by which Sever supplied TXMD with the product ANNOVERA®.

30. The Sever Agreement was expressly listed as a Transferred Agreement on Section 7.11(a) of the TXMD Disclosure Schedules. Moreover, TXMD provided Mayne with a copy of the Sever Agreement prior to Closing.

31. However, without notifying Mayne, and in derogation of the Sever Agreement, TXMD extended new and unfavorable pricing terms to Sever prior to Closing, modifying the most critical term of the Sever Agreement and rendering the Sever Agreement incomplete, outdated, inaccurate, and untrue at the time of Closing. Indeed, on information and belief, TXMD's provision of new pricing terms to Sever began in discussions between TXMD and Sever regarding potential amendments to the Sever Agreement before December 4, 2022, when Mayne and TXMD executed the Transaction Agreement. Because TXMD knew of its negotiations with Sever leading to new pricing terms before the Transaction Agreement was executed, TXMD's misrepresentation of the Sever Agreement was intended to induce Mayne into signing the agreement.

32. Mayne uncovered the truth of TXMD's lies about the Sever Agreement when, following the Closing, Sever notified Mayne that Sever and TXMD had amended the terms of the Sever Agreement such that the pricing listed in the Sever Agreement was no longer valid, and TXMD had agreed to a price increase of more than 50%.

33. Thus, the Sever Agreement TXMD provided to Mayne prior to Closing was not the operative and current agreement in force, and omitted a material amendment related to the pricing of the products supplied by Sever. TXMD failed to provide Mayne with a true, correct and

complete copy of the Sever Agreement including all amendments thereto and indeed purposely misled Mayne by providing an outdated and inaccurate copy of the Sever Agreement.

34. The failure to disclose this material amendment or modification of the Sever Agreement constitutes a breach of Section 7.11 of the Transaction Agreement.

35. Moreover, the extension of new pricing terms by TXMD to Sever pre-closing is in and of itself a breach of the representation in Section 7.11 that "[e]ach other party to each Transferred Agreement is not in material breach or default thereunder." Insofar as TXMD and Sever applied new terms that contradicted the Sever Agreement, they were in material breach or default under the Sever Agreement.

36. As a direct result of TXMD's misrepresentations, Mayne suffered damages of at least $5,473,000 due to the substantially increased pricing for the continued supply of ANNOVERA®.

***TXMD Misrepresented The Amount of Inventory Maintained at Several Distributors***

37. Pursuant to Section 7.12 of the Transaction Agreement, TXMD represented to Mayne the following:

> 7.12 <u>Inventory</u>. TXMD has provided to the Purchaser true, bona fide and unaltered copies of Inventory reports for the Products since January 1, 2022. The TXMD Group maintains no more than 45 days of Inventory at its distributors for any Product. All Inventory consists of a quality that is usable and salable in the ordinary course of business consistent in all material respects with past practice. No Inventory is obsolete, damaged, or defective. All Inventory is owned by the TXMD Group is free and clear of all Encumbrances, except for Inventory that is held on a consignment basis. There are no open purchase orders, binding forecasts, minimum purchase requirements, or other obligations of the TXMD Group to purchase active pharmaceutical ingredients or other components of the Products. Short- Dated and Saleable Inventory.

38.　　Additionally, pursuant to Section 9.1 of the Transaction Agreement, TXMD covenanted that:

> During Pre-Closing Period and except (i) as required by applicable Law, (ii) to the extent required by this Agreement or any Ancillary Agreement, or (iii) as consented to in writing by Purchaser (such consent not to be unreasonably withheld, conditioned or delayed), TXMD shall, and shall cause its each member of the TXMD Group to: (a) conduct the Product Exploitation in the ordinary course of business consistent in all material respects with past practice, (b) use commercially reasonable efforts to maintain, the Licensed IP and Transferred Assets, and any assets that would be Licensed IP or Transferred Assets if owned on the Closing Date by TXMD or any member of the TXMD Group, in the ordinary course of business in good operating order and condition, reasonable wear and tear excepted, (c) maintain no more than forty five (45) days of Inventory ("stock in trade") for any Product at its wholesalers and distributors days of Inventory at its distributors, and (d) conduct the Product Exploitation in all material respects in compliance with Law.

39.　　Following the Closing, Mayne determined that at the time of the Closing, TXMD maintained more than 45 days of inventory at several of its distributors.

40.　　At the time of closing, TXMD maintained inventory for the product ANNOVERA® in the channel for 63 days and inventory for the product BIJUVA® in the channel for 52.7 days. This excess inventory of ANNOVERA® and BIJUVA® was thus maintained for days and weeks above the representation and covenant limit of 45 days.

41.　　This constitutes a breach of TXMD's representation in Section 7.12 as well as the covenant in Section 9.1(c) of the Transaction Agreement.

42.　　The damages to Mayne resulting from this breach amount to at least $975,586, representing lost cash flow, among other costs.

*Mayne Made Timely Indemnification Claims to TXMD*

43. Pursuant to Section 12.2 of the Transaction Agreement, TXMD agreed to indemnify, defend, and hold Mayne harmless from and against losses suffered to the extent that the losses arose out of, resulted from, or related to, among other things:

   (a) the inaccuracy or breach of any representation or warranty made by TXMD, any TXMD Group Member or any of its Affiliates contained in this Agreement or in any Ancillary Agreement or in any certificate or other instrument delivered by TXMD, any TXMD Group Member or any of its Affiliates pursuant to this Agreement or any Ancillary Agreement.

   (b) the breach of or failure to perform any covenant or agreement by TXMD, any TXMD Group Member or any of its Affiliates contained in this Agreement or in any Ancillary Agreement; and

   (c) any and all Excluded Liabilities.

44. The definition of "Loss" in the Transaction Agreement means "any and all damages losses, Liabilities and expenses actually incurred by a Party, including reasonable attorneys' fees and expenses in connection with any Action or Claim, whether involving a Third-Party Claim or a claim solely between the Parties."

45. Thus, in addition to damages, Mayne is entitled to compensation for its reasonable attorneys' fees and expenses incurred in connection with this action.

46. Under Section 12.5 of the Transaction Agreement, the parties agreed that any "claim for indemnification for any matter not involving a Third-Party Claim may be asserted by written notice to the Party from whom indemnification is sought," and that "[i]f the Indemnifying Party does not object to such claim within 30 days, it shall be deemed to have agreed to the claim."

47. By letter dated August 4, 2023, Mayne notified TXMD of its obligation to indemnify and defend Mayne from losses suffered as a result of TXMD's misrepresentations and omissions concerning Lang, Sever, and the inventory TXMD maintained with its distributors.

48. By letter dated September 1, 2023, TXMD rejected Mayne's indemnification demand and asserted that it had not breached the Transaction Agreement.

49. By letter dated October 25, 2023 Mayne responded to TXMD's rejection of its indemnification obligations, further explaining that TXMD's assertions relied on a misunderstanding of Mayne's indemnification claims and the Transaction Agreement provisions upon which those claims were based.

50. To date, TXMD has not made any further response to Mayne's demand for indemnification, nor has TXMD offered or provided compensation to Mayne for the injuries it suffered as a result of TXMD's misconduct.

## FIRST CAUSE OF ACTION
### Breach of Contract

51. Mayne repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

52. Mayne materially complied with its obligations under the Transaction Agreement, including by rendering payment to TXMD consisting of the Purchase Price of $140,000,000 plus the Estimated Net Working Capital Amount of $13,137,932.

53. TXMD failed to comply with its obligations under the Transaction Agreement by misrepresenting to Mayne that Lang would continue to supply products to TXMD and Mayne when in fact TXMD had been notified prior to Closing of Lang's intent to discontinue its supply of product beginning in January 2023, and by refusing to indemnify and hold Mayne harmless for the losses resulting from TXMD's conduct.

54. As a direct and proximate result of TXMD's breach of the Transaction Agreement, Mayne has been injured in an amount to be determined at trial, but which is at least $5,078,000.

## SECOND CAUSE OF ACTION
**Breach of Contract**

55. Mayne repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

56. TXMD failed to comply with its obligations under the Transaction Agreement by extending new pricing terms to Sever prior to Closing.

57. TXMD also failed to comply with its obligations under the Transaction Agreement by failing to inform Mayne of the modification of material pricing terms between TXMD and Sever.

58. As a direct and proximate result of TXMD's breach of the Transaction Agreement, Mayne has been injured in an amount to be determined at trial, but which is at least $5,473,000.

## THIRD CAUSE OF ACTION
**Breach of Contract**

59. Mayne repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

60. TXMD failed to comply with its obligations under the Transaction Agreement by maintaining inventory of Annovera and Bijuva at distributors in violation of its covenant in the Transaction Agreement that TXMD would maintain no more than 45 days of Inventory at its distributors for any Product, and by TXMD's further misrepresentation in the Transaction Agreement that it was not maintaining more than 45 days of Inventory at its distributors for any Product.

61. As a direct and proximate result of TXMD's breach of the Transaction Agreement, Mayne has been injured in an amount to be determined at trial, but which is at least $975,586.

## FOURTH CAUSE OF ACTION
**Fraudulent Inducement**

62. Mayne repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

63. TXMD fraudulently induced Mayne into entering the Transaction Agreement by representing false material facts as true, including representing that no Material Supplier had notified TXMD verbally or in writing that it would stop, or decrease the rate of, supplying Products, when in fact TXMD knew that Lang planned to discontinue its supply of certain prenatal vitamins.

64. TXMD fraudulently induced Mayne into entering the Transaction Agreement by representing false material facts as true, including by representing that TXMD had provided true, correct and complete copies of all agreements, including all amendments and amendments thereto, related to the Products, including without limitation each of the Transferred Agreements, when in fact TXMD had modified the most critical term of the Sever Agreement and rendered the Sever Agreement incomplete, outdated, inaccurate, and untrue with respect to pricing terms at the time of Closing. Indeed, by listing and sharing with Mayne an outdated and inaccurate version of the Sever Agreement, TXMD actively concealed the truth—that it had already agreed with Sever to a massive price increase that they knew would ultimately redound to Mayne's detriment.

65. TXMD fraudulently induced Mayne into entering the Transaction Agreement by falsely representing that no party to a Transferred Agreement was in material breach or default thereunder, when in fact TXMD's extension of modified pricing terms to Sever constituted a breach or default under the Sever Agreement.

66. On information and belief, TXMD knew or should have known about Lang's discontinuation of supply and Sever's amendment pricing terms before TXMD and Mayne

executed the Transaction Agreement on December 4, 2022. TXMD made the foregoing false representation and material omissions with the knowledge of their falsity, or at least with reckless indifference to the truth, and with the intention to so induce Mayne to enter into the Transaction Agreement.

67. Mayne reasonably relied on the foregoing false representations and material omissions by TXMD. As a result of Mayne's reasonable reliance on TXMD's misrepresentations and omissions, Mayne suffered damages for all financial losses caused by the fraud, including out-of-pocket expenses, lost profits, and punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Mayne respectfully requests that the Court grant the following relief against TXMD:

a) That judgment be entered in favor of Mayne and against TXMD for such damages as Mayne has sustained by reason of TXMD's conduct as set forth above, in an amount to be determined at trial, but in no event less than $11,526,586, plus punitive damages and pre-judgment and post-judgment interest;

b) That judgment be entered in favor of Mayne and against TXMD for the costs and expenses, including reasonable attorneys' fees, incurred by Mayne in connection with this action; and

c) Granting such other relief as this Court deems just and proper.

|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
| OF COUNSEL: | */s/ S. Mark Hurd*<br>S. Mark Hurd (#3297) |
| ARNOLD & PORTER<br> KAYE SCHOLER LLP<br>Aaron Miner<br>250 West 55th Street<br>New York, NY 10019-9710<br>(212) 836-8000<br>Aaron.Miner@arnoldporter.com | Elise K. Wolpert (#6343)<br>1201 N. Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>shurd@morrisnichols.com<br>ewolpert@morrisnichols.com |
|  | *Attorneys for Plaintiff*<br>*Mayne Pharma LLC* |

May 30, 2025