# EXHIBIT A

## **DECLARATION OF KIMBERLY CARAWAY**

I, Kimberly Caraway, declare as follows:

1. I am employed as a Special Agent by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") in Wilmington, Delaware. I have held this position since September 2004.

2. ICE is charged with enforcement of more than 400 federal statutes, and its mission is to protect the United States from cross-border crime and illegal immigration that threaten national security and public safety. To carry out this mission, ICE focuses on enforcing federal immigration laws, preventing terrorism, and combating transnational criminal threats.

3. HSI is a division of ICE that conducts federal criminal investigations into the illegal movement of people, goods, money, contraband, weapons, and sensitive technology into, out of, and through the United States.

4. During my tenure as an HSI Special Agent, I have investigated numerous violations of federal law including child exploitation, money laundering, drug trafficking, contraband smuggling, worksite enforcement, and illegal immigration. I am empowered by law to investigate and make arrests for offenses involving illegal immigration.

5. ICE operates a tip line through which individuals can report suspicious criminal activity from child exploitation and drug smuggling to human trafficking and illegal immigration.

6. Since January 2025, HSI Wilmington has seen a significant increase in investigative leads from the tip line. The majority of these leads have reported illegal immigration. Some of the leads have reported individuals in Delaware without lawful immigration status, while others have reported Delaware businesses allegedly employing undocumented aliens. Both represent violations of federal immigration laws. For example, it is unlawful for a person or entity

1

to hire for employment an "unauthorized alien." 8 U.S.C. 1324a(a)(1). HSI is investigating these leads.[1]

7. As one investigative tool to substantiate the leads about businesses allegedly employing undocumented aliens, HSI has sent administrative subpoenas to the Delaware Department of Labor ("DE DOL") requesting wage reports for the third and fourth quarter of 2024 for several businesses.

8. In Delaware, employers are required to file quarterly wage reports with the Delaware Department of Labor, Division of Unemployment Insurance. These reports, submitted on Form UC-8 and UC-8A, detail the total gross wages paid to employees during the quarter and the total taxable wages. Additionally, wage reports contain the number of employees a business claims to have, the total wages, employees' names and social security numbers, and individual wages earned.

9. Wage reports can be useful to HSI's investigations for a number of reasons. First, HSI can input the information from the wage reports into ICE databases to determine whether an employee's social security number has been issued by the Social Security Administration ("SSA"), and if so, whether the social security number is associated with more than one individual. Social Security numbers that have not been issued by the SSA can indicate that an individual may have made up the number and may be unlawfully present and working in the United States. Social Security numbers that are associated with multiple individuals in different locations also can indicate that an individual may be unlawfully present and working in the United States.

---

[1] During this time, ICE has also arrested undocumented aliens who have self-reported employment at various businesses.

10. Second, HSI can compare the number of employees the business claims to have had in wage reports to the number of employees seen during surveillance. For example, if law enforcement conducts surveillance on a business and observes 20 employees enter but the wage reports consistently only identify 5 employees, this may be an indicator that some of the employees are being paid "under the table" or in cash and may be unlawfully present and working in the United States. This is also an indicator that the business may have underreported its gross wages, which decreases its overall tax liability and allows for a short-term net profit.

11. Third, the wage reports can help HSI maintain a covert investigation, as well as confirm whether records received from a business are genuine. For example, HSI could subpoena Forms I-9 (Employment Eligibility Verification) and payroll records from a business using subpoenas. However, once a business receives a subpoena, they are made aware that they are under investigation. This may cause a business to fabricate records that they did not, but were required to, maintain; cause a business to temporarily fire undocumented alien employees; and/or cause undocumented alien employees to flee.

12. HSI is not in possession of the wage reports and cannot otherwise get access to the information because it is reported by the businesses to the State of Delaware.

13. The lack of wage reports significantly inhibits HSI's ability to conduct worksite enforcement investigations in Delaware.

14. On February 3, 2025, HSI issued DHS Immigration Enforcement Subpoena HSI-WM-2025-029751-001 pursuant to 8 U.S.C. § 1225(d) and 8 C.F.R. § 287.4(c). This subpoena was issued on DHS Form I-138, signed by Assistant Special Agent in Charge ("ASAC") Kenneth Krauss, and required the production of wage reports for the third and fourth quarters of 2024 for three Delaware businesses by February 12, 2025. The businesses were identified by their names

and addresses.  I served the aforementioned subpoena online via Egress to Crystal Wimbush, Deputy Principal Assistant to Darryl M. Scott, Director, Delaware Division of Unemployment, Delaware Department of Labor.  This is the method by which I have served Customs summonses and/or controlled substances enforcement subpoenas on Ms. Wimbush on multiple occasions in the past.  On those prior occasions, DE DOL has produced responsive records without issue.

15. On or about February 7, 2025, HSI issued a second DHS Immigration Enforcement Subpoena, numbered HSI-WM-2025-032366-001 pursuant to 8 U.S.C. § 1225(d) and 8 C.F.R. § 287.4(c).  The subpoena was issued on DHS Form I-138, signed by ASAC Krauss, and required the production of wage reports for the third and fourth quarters of 2024 for seven additional Delaware businesses by February 21, 2025.  The businesses were identified by their names and addresses.  I served the aforementioned subpoena online via Egress to Ms. Wimbush.

16. On February 11, 2025, Ms. Wimbush contacted me via Egress informing that DE DOL requires at least 15 business days to pull the information and requesting that I include the FEINs (or Federal Employer Identification Numbers) of the businesses to ensure accurate information. On February 12, 2025, I responded to Ms. Wimbush that I did not have the FEIN numbers but asked if the TIN or file numbers[2] would help.  On that same day, Ms. Wimbush responded yes, and asked that I send the TIN or file numbers for the businesses.

17. On March 4, 2025, HSI issued a third DHS Immigration Enforcement Subpoena, numbered HSI-WM-2025-038995-001, pursuant to 8 U.S.C. § 1225(d) and 8 C.F.R. § 287.4(c). The subpoena was issued on DHS Form I-138, signed by ASAC Krauss, and required the production of wage reports for the third and fourth quarters of 2024 for ten additional Delaware

---

[2] A file number is a unique seven-digit number issued by the State of Delaware to each company registered with its Division of Corporations.

4

businesses by March 18, 2025. The businesses were identified by their names, addresses, and file numbers. I served the aforementioned subpoena online via Egress to Ms. Wimbush.

18. Also on March 4, 2025, and on March 25, 2025, I asked Ms. Wimbush via Egress for a status update on the previous subpoenas served. On March 26, 2025, Ms. Wimbush responded, apologizing for the delay and requesting that HSI reissue the subpoena with FEIN numbers and also requesting that HSI resend all three subpoenas because they were only in possession of two. On that day, I responded referencing our previous conversation and asked if the file numbers, which had been added to the subpoenas, were no longer acceptable. On April 2, 2025, Ms. Wimbush responded that she had sent a follow-up email to the processor and that some requests may take time due to the amount of information found or the number of requests received. She also asked what the file number corresponds with and asked for the numbers of the subpoenas because she wanted to make sure she had all of them before asking for help with them.

19. Finally, on April 7, 2025, HSI issued a fourth, comprehensive DHS Immigration Enforcement Subpoena, numbered HSI-WM-2025-048065-001, pursuant to 8 U.S.C. § 1225(d) and 8 C.F.R. § 287.4(c). The subpoena was issued on DHS Form I-138, signed by ASAC Krauss, and required the production of wage reports for the third and fourth quarters of 2024 for fifteen Delaware businesses by April 18, 2025. The businesses were identified by their names, addresses, and file numbers. I served the aforementioned subpoena online via Egress to Ms. Wimbush. In that communication, I told Ms. Wimbush that the aforementioned subpoena superseded the three prior subpoenas. To my knowledge, Ms. Wimbush never responded to this final communication.

20. Subsequently, HSI sought assistance from the United States Attorney's Office for the District of Delaware.

5

21. On June 3, 2025, a last-chance letter from the U.S. Attorney's Office was sent via certified mail to the Secretary of Labor, LaKresha Moultrie, notifying her that the United States Attorney's Office for the District of Delaware would commence legal action against the Delaware Department of Labor should the Department fail to comply with the subpoena by June 20, 2025. A copy of the aforementioned subpoena was attached to the last-chance letter. I also sent a copy of the last-chance letter via Egress to Ms. Wimbush on June 4, 2025.

22. Thereafter, on July 15, 2025, I went to the Delaware Department of Labor located at 4425 N Market Street, Wilmington, Delaware 19802. I served the aforementioned comprehensive subpoena HSI-WM-2025-048065-001 in person to the Delaware Department of Labor on Katherine Grasso, Chief of Staff of the Delaware Department of Labor.

23. To date, the Delaware Department of Labor has not complied with any of HSI's administrative subpoenas.

24. To date, the U.S. Attorney's Office has received no response from the Delaware Department of Labor.

25. This declaration is based upon my personal and professional knowledge, information obtained from other individuals employed by HSI, and information obtained from various records and systems maintained by DHS. I provide this declaration based on the best of my knowledge, information, belief, and reasonable inquiry for the above captioned case.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this  30th  day of July 2025.

*[signature]*
KIMBERLY CARAWAY
Special Agent, Homeland Security Investigations
Wilmington, Delaware

7